# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT KNOXVILLE

| | | |
|---|---|---|
| ROBERT L. SCHMIDT, and<br>STACY S. SCHMIDT, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 3:06-CV-209 |
| | ) | (Phillips) |
| NATIONAL CITY CORPORATION, and<br>LITTON LOAN SERVICING LP, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The plaintiffs have filed this action *pro se* asserting that they have suffered damages as a result of losing their home due to foreclosure. Plaintiffs ask the court to set aside the foreclosure and return their former home to them, award them money damages in an amount exceeding $75,000, plus costs of this action, and for the court to enter an order enjoining the defendants from engaging in further wrongful practices. Defendants have responded that the foreclosure of plaintiffs' home resulted from the failure of plaintiffs to make payments and not as the result of an improper actions of any defendant. Defendant Deutsche Bank has filed a counterclaim to collect the deficiency balance resulting from the foreclosure sale of plaintiffs' home. The parties have filed cross-motions for summary judgment. The court, consisting of the district judge and the magistrate judge assigned to the case, heard extended oral arguments (over an hour and a half) on the

pending motions on November 14, 2008. For the reasons which follow, plaintiffs' motions for summary judgment are denied, the defendants' motions to dismiss and/or for summary judgment are granted, and Deutsche Bank is granted judgment against plaintiffs in the amount of $149,653.00.

## Background

In January of 2003, plaintiffs refinanced their home with New Century Mortgage. Plaintiffs refinanced their loan to access a portion of the equity in the home in order to consolidate their debts and have adequate funds available to meet their daily living expenses for eight months while Mr. Schmidt recovered from knee replacement surgery scheduled for April 2003. Plaintiffs state that they were approved by New Century for a loan of $262,500.00, however, they only received $247,500.00 from the refinancing. Plaintiffs allege that the $15,000 difference caused them to suffer hardship as a result of not receiving the requested amount of $262,500.00. Plaintiffs allege that New Century intentionally reduced the amount of the new loan so that plaintiffs could not afford to reorganize their finances to adequately cover their anticipated expenses as they came due in the months to come. Plaintiffs aver they had more than $100,000.00 in equity in their home at the time of the refinancing.

Approximately one year later, plaintiffs requested a loan modification from PCFS/National City, which was denied. PCFS/National City told plaintiffs the only option available was for them to enter into a forebearance agreement. A forebearance agreement was approved in May 2004. Litton Loan took over servicing of plaintiffs' loan on December

1, 2004 and on December 8, plaintiffs requested a loan modification from Litton. Litton advised plaintiffs that the investor did not allow loan modifications. Plaintiffs failed to make payments as required by the forebearance agreement, and on July 5, 2005, Litton began the foreclosure process.

On April 28, 2006, plaintiffs filed a complaint against new Century Mortgage Corporation, National City, Litton, and Crisilip, Phillip & Associates in the Blount County Circuit Court. Based on the allegations that some of the defendants had violated various federal mortgage statutes, Litton and National City filed a notice of removal to this court on June 5, 2006. On July 26, 2006, plaintiffs moved to amend their original complaint, the motion was granted by the court, and plaintiffs filed their amended complaint on September 20, 2006.

On February 23, 2007, despite having counsel of record, plaintiffs filed a motion for emergency hearing for injunctive relief *pro se*. On March 7, 2006, a hearing was held and plaintiffs' counsel, Mr. Hughes, was allowed to withdraw from representation in the case. Plaintiffs were given sixty days to obtain new counsel, and the court took their motion for injunctive relief under advisement.

Because plaintiffs failed to make their mortgage payments, Litton, in its capacity as attorney-in-fact for Deutsche Bank, executed an Appointment of Substitute Trustee appointing Daniel J. Moore as substitute trustee. The Appointment of Substitute Trustee was recorded on December 4, 2006 in the Blount County Register's Office. Since

-3-

no injunction was granted or entered at the March 7, 2007 hearing, Deutsche Bank proceeded with its state law power of sale foreclosure on March 20, 2007. At said sale, Deutsche Bank, as trustee under the Pooling and Servicing Agreement dated April 1, 2003, Morgan Stanley Capital I Inc. Trust 2003-NC, was the highest and best bidder in the amount of $279,000.

Subsequent to Deutsche Bank purchasing the property at the foreclosure sale, it filed a detainer action in Blount County General Sessions Court on April 3, 2007. At the May 7, 2007 hearing on the detainer action, plaintiffs appeared without counsel and presented their arguments to the court. After a full trial on the merits, the Blount County court was of the opinion that Deutsche Bank was entitled to possession of the property and so ordered. No appeal was taken by the plaintiffs during the ten day period allowed to appeal the General Sessions Court judgment to the Circuit Court, and the General Sessions court order became final.

On April 16, 2007, plaintiffs, acting *pro se*, filed yet another complaint in the Blount County Circuit Court against Deutsche Bank, and the firm and attorneys which participated in the foreclosure and detainer action. In their complaint, plaintiffs raised various issues concerning the validity of the foreclosure and sought to invalidate same. The Blount County Circuit Court complaint was voluntarily dismissed.

On May 8, 2007, attorney Chris Gilreath filed a notice of appearance in this action on behalf of plaintiffs.

On May 22, 2007, a Writ of Possession was issued by the Blount County General Sessions Court. The Blount County Sheriff's Office advised counsel for the plaintiffs that the writ would be served on the plaintiffs on May 29, 2007 at 10:00 a.m. On the morning of May 29, 2007, counsel for defendants received copies of the plaintiffs' motion for temporary restraining order. At approximately 9:45 that morning, counsel for defendants was notified by attorney Gilreath that this court was issuing a temporary restraining order granting the plaintiffs' request for injunctive relief.

After being advised by attorney Gilreath that the temporary restraining order was being issued, counsel for defendants notified the Blount County Sheriff's Office of the order and proceeded to withdraw the request for enforcement of the writ of possession. This court entered the *ex parte* order to show cause for temporary restraining order on May 29, 2007. A hearing was set on June 1, 2007 on the show cause order.

At the June 1 hearing, this court dissolved the injunction due to the plaintiff's failure to post the required $109,000 bond. Once the temporary restraining order had been dissolved, the Blount County Sheriff's Office executed the state court Writ of Possession on June 7, 2007 and the plaintiffs were evicted from their former home.

On January 10, 2008, plaintiffs filed a second amended complaint naming additional defendants, including Daniel Moore and Greg Logue, counsel for defendants. Mr. Logue and Mr. Moore were subsequently dismissed by order entered March 4, 2008. Crisilip, Philip & Associates were dismissed by order entered July 24, 2006. New Century

Mortgage was dismissed by order entered March 4, 2008. The Blount County Sheriff's Office was dismissed by order entered March 4, 2008. PCFS Mortgage Resources, Inc., was never served with process in this case; therefore, any claims against it are hereby dismissed for failure of the plaintiffs to prosecute said claims. The remaining defendants in this case are: National City Corporation, Litton Loan Servicing LP, Deutsche Bank National Trust Company, C-BASS, William and Julie Allender, and Randall Mercks.

Plaintiffs have filed four motions for summary judgment [Docs. 125,148, 150, 202]. Defendants William and Julie Allender have filed motions to dismiss and for summary judgment [Docs. 133, 192, 199]. Defendant Randall Mercks has filed motions to dismiss and for summary judgment [Docs. 138, 200]. Defendants C-BASS, Deutsche Bank, Litton Loan, and National City have filed a motion for summary judgment [Docs. 197]. These motions will be addressed below.

## Analysis

A motion to dismiss under Rule 12(b)(6), Federal Rules of Civil Procedure, requires the court to construe the complaint in the light most favorable to the plaintiff, accept all the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief. *Meador v. Cabinet for Human Resources,* 902 F.2d 474, 475 (6th Cir.) *cert. denied,* 498 U.S. 867 (1990). The court may not grant such a motion to dismiss based upon a disbelief of a complaint's factual allegations. *Lawler v. Marshall,* 898 F.2d 1196, 1198 (6th Cir. 1990); *Miller v. Currie,* 50 F.3d 373, 377 (6th Cir. 1995) (noting that courts should not

weigh evidence or evaluate the credibility of witnesses). The court must liberally construe the complaint in favor of the party opposing the motion. *Id.* However, the complaint must articulate more than a bare assertion of legal conclusions. *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Id.* (citations omitted).

Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment will be granted by the court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris to Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir. 1987); *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). Once the moving party presents evidence sufficient to support a motion under Rule 56, Federal Rules of Civil Procedure, the non-moving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986); *White,* 909 F.2d at 943-44. The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case

with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

Motions for Summary Judgment Filed by Plaintiffs

The plaintiffs have filed four motions for summary judgment. First, the plaintiffs argue that the owner and holder of the plaintiffs' mortgage has never been disclosed by the defendants; therefore, their home has been fraudulently foreclosed upon because the defendants neither had authority nor standing to do so. Contrary to the plaintiffs' argument, the plaintiffs have been informed of the identity of the owner and holder and that Deutsche Bank served as trustee for the holder. According to the record in this case, the owner and beneficial holder of the Note and Deed of Trust on the plaintiffs' home at the time of foreclosure was Deutsche Bank National Trust Company, as trustee under the Pooling and Servicing Agreement dated April 1, 2003, Morgan Stanley Capital I Inc. Trust 2003-NC. The Deed of Trust on the plaintiffs' former home was properly assigned to Deutsche Bank, the entity that foreclosed on the Deed of Trust after the plaintiffs failed to timely make their mortgage payments. Accordingly, plaintiffs' assertion that the owner and holder of the mortgage has never been identified is totally without merit.

Plaintiffs next argue that Deutsche Bank, the entity which conducted the foreclosure did not have the authority to do so. Contrary to plaintiffs' argument, the Deed of Trust was validly assigned to Deutsche Bank. Moreover, the Pooling and Servicing Agreement refers to the ability of the servicing agent to conduct foreclosure on behalf of the holder of the deed of trust. In Tennessee, when notes secured by a mortgage are

assigned, the mortgage passes along with the note and can be enforced by the assignee. *Frame v. Tabler,* 52 S.W. 1014 (Tenn.App. 1898). Therefore, in Tennessee, the holder of the note at the time of default can institute foreclosure. In this case, the Deed of Trust was actually assigned to Deutsche Bank, the entity that conducted the foreclosure, so plaintiffs' argument that Deutsche Bank was without authority to foreclose on the property is without merit.

Plaintiffs have also asserted that New Century's Chapter 11 bankruptcy filing had some effect to stay Deutsche Bank's ability to foreclose. New Century was the plaintiffs' original lender; however, the plaintiffs' Note and Deed of Trust were assigned prior to New Century filing bankruptcy. The automatic stay in effect due to the New Century bankruptcy filing had nothing to do with the plaintiffs' loan or the foreclosure which was necessitated by their failure to make their mortgage payments. New Century was no longer the holder of the plaintiffs' loan when it filed its Chapter 13 case. The automatic stay prevented any action against New Century and not actions by New Century or subsequent assignees.

Second, plaintiffs have moved for summary judgment for relief of all monetary claims made by defendants. In support of their motion, plaintiffs state that a PMI insurance policy was in place during their involvement with defendants. Plaintiffs believe that defendants had a duty to make claim under the policy for any amounts owed. Plaintiffs further argue that the insurance policy coverage and the proceeds from the sale of their

home to the Allenders should be more than sufficient to cover the principal of the mortgage and the claimed arrearages.

The defendants respond that the insurance policy in question was a casualty insurance policy which Litton was forced to acquire when the plaintiffs failed to secure insurance on the property with a private mortgage insurance policy which would cover the mortgage holder's loss in the event of destruction of the home. There was no insurance policy in place to protect against this loss. Had the home been destroyed by fire, a claim could have been made; however, this policy did not cover losses incurred as a result of borrower default. Defendants further state that after crediting the $279,000 purchase price to the balance of the loan there resulted a deficiency in the amount of $149,653.00. Defendants have submitted the affidavit of Debra Lyman, Vice President for Litton, which sets forth the deficiency balance owed as of the date that the counter-claim was filed, verifies that neither Deutsche Bank nor Litton received insurance proceeds with respect to the plaintiffs' loan, and that neither entity had a right to make a claim for same.

Plaintiffs next argue that they are entitled to summary judgment because defendants failed to produce the original deed of trust and promissory note regarding their mortgage. However, counsel for defendants has informed the court that he has the originals of these documents in his office vault. Copies of these documents have been provided to plaintiffs. The original Note and Deed of Trust bear the original ink signatures of the plaintiffs. Moreover, the plaintiffs have been invited to come in and inspect these documents, but have declined to do so. Instead, the plaintiffs continue to assert in their

-10-

pleadings that the original documents do not exist, therefore, the foreclosure of their home was done without authority. This argument is nonsensical and without merit.

In their motions for summary judgment, plaintiffs are asking to be restored to possession of their former home. To do so would require a finding that the defendants did not have the right to foreclose or that the foreclosure sale was somehow invalid, and would require the subsequent purchasers to be divested of their rights in the property. The plaintiffs have failed to allege any facts which would justify being restored possession of their former home. Accordingly, plaintiffs' motions for summary judgment are **DENIED.**

<u>Motion for Summary Judgment filed by Deutsche Bank Defendants</u>

The Deutsche Bank defendants (National City Corporation, Litton Loan Servicing LP, Deutsche Bank National Trust Company and C-Bass) have moved for summary judgment stating that there are no genuine issues as to any material facts in this case regarding the validity of the foreclosure that resulted from the plaintiffs' failure to make their mortgage payments, and these defendants are entitled to judgment as a matter of law on all of plaintiffs' claims against them.

Plaintiffs rest their assertions of wrongful foreclosure upon the twelve claims set forth in their second amended complaint. Count One asserts a claim of fraudulent conveyance in violation of Tenn. Code Ann. §§ 66-3-101 and 66-3-104. Section 66-3-101 forbids conveyances made with the intent to hinder, delay or defraud creditors. Section 66-3-104 provides that any person who transfer land by execution of a general warranty deed

-11-

with knowledge of outstanding liens commits a Class E felony. These statutes were intended to void transfers made with the intent to defraud credits and they have no applicability to this case. Plaintiffs were never "creditors" of any of the defendants. It appears that plaintiffs are attempting to claim either that the foreclosure and/or the sale of their former home after the foreclosure in some way constituted a fraudulent conveyance, however, there are no facts which support their allegations that these defendants were trying to defraud their creditors by foreclosing or selling the property acquired at the foreclosure sale. Moreover, § 66-3-104 is a criminal statute, and as such, does not give rise to a private cause of action.

Plaintiffs are resting their claims that the foreclosure was invalid on a theory of fraudulent conveyance. In response to plaintiffs' allegations, the Deutsche Bank defendants have submitted the affidavit of attorney Daniel Moore, the Substitute Trustee, who conducted the foreclosure sale. Moore's affidavit states that the foreclosure sale was properly noticed, conducted, and completed in accordance with Tennessee law. The affidavit further states that Deutsche Bank was the holder of the Deed of Trust at the time of the sale and that Litton had authority to act on Deutsche Bank's behalf in its capacity as attorney-in-fact. Plaintiffs have presented no evidence that would call into question the validity and effectiveness of the March 20, 2007 foreclosure sale. Accordingly, these defendants will be granted summary judgment as to plaintiffs' claims contained in Count One.

Plaintiffs' claims set forth in Counts Two, Three, Four, Seven and Ten of the second amended complaint assert causes of action based on various criminal statutes pertaining to theft of property (Count Two), forgery (Count Three), criminal conspiracy (Count Four), violation of state and/or federal civil rights (Count Seven), and conspiracy against rights (Count Ten).

The criminal statutes cited with respect to these counts do not provide for a private civil cause of action. Specifically, Count Two (theft of property) cites to Tenn. Code Ann. § 39-14-103, which is a Tennessee criminal statute dealing with offenses against property. Count Three (forgery) cites to Tenn. Code Ann. §39-14-141, which is a Tennessee criminal statute dealing with forgery. Count Four (criminal conspiracy) cites to Tenn. Code Ann. § 39-12-103, which is a Tennessee statute dealing with criminal conspiracy. None of these statutes provide for a private civil cause of action, and plaintiffs' claims alleging violation of these statutes are dismissed.

Count Seven (violation of state and federal civil rights) does not cite to any statute whatsoever, and the court assumes that plaintiffs are attempting to state a claim pursuant to 42 U.S.C. § 1983. To state a cause of action under 42 U.S.C. § 1983, plaintiffs must allege the "deprivation of rights secured by the United States Constitution or a federal statute by a person who is acting under color of state law." *Spadafore v. Gardner,* 330 F.3d 849 (6th Cir. 2003). Whether state action is present in a case involving private parties depends on whether the conduct allegedly causing the deprivation of a federal right can be fairly attributable to the state. *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 937 (1982).

-13-

Although the court is required to read *pro se* complaints liberally, *(see Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)), a plaintiff must plead specific facts backing up his claims of civil rights violations. C-BASS, Deutsche Bank, Litton Loan, and National City are corporations and business entities with the status of a private citizen.

Although it is true that private parties jointly engaged with state or local officials in prohibited conduct can be said to act under color of state law, *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152 (1970), general allegations of cooperation between private individuals and government agencies do not make out a claim of action taken under color of law. In particular, the nature of the relationship or cooperation between the state and private parties must be pled in detail. *Glaros v. Perse,* 628 F.2d 679 (1st Cir. 1980); *Colburn v. Upper Darby Township,* 883 F.2d 663 (3rd Cir. 1988).

Plaintiffs' second amended complaint states only conclusory allegations that the defendants violated plaintiffs' civil rights, and fails to state specific facts alleging any collusion, joint course of action, or other nexus with state officers demonstrating that the defendants' agents or employees acted under color of law. Thus, the court concludes that the defendants' actions were <u>not</u> taken under color of law. Moreover, as discussed below, there has been no violation of plaintiffs' constitutional rights by the defendants. Accordingly, defendants are granted summary judgment as to plaintiffs' § 1983 claim.

Count Ten (conspiracy against rights), cites to 18 U.S.C. §§ 241 and/or 242. However, only the United States can prosecute a claim pursuant to these statutes. The

-14-

statutes do not give rise to a civil action for damages. *See Cok v. Cosentino,* 876 F.2d 1 (1st Cir. 1989); *United States v. Oguiaju,* 76 Fed.Appx. 579 (6th Cir. 2003); *Kelly v. Rockefeller,* 69 Fed.Appx. 414 (10th Cir. 2003).

Count Five of plaintiffs' second amended complaint alleges that National City, Litton and Deutsche Bank committed a breach of contract. In Tennessee, there are three elements that must be shown in order to state a claim for breach of contract. The party making the claim must prove (1) the existence of an enforceable contract, (2) a non-performance amounting to a breach of contract, and (3) damages caused by the breach. *Ingram v. Cendant Mobility Fin. Corp.,* 215 S.w.3d 367, 374 (Tenn.App. 2006). Plaintiffs have not submitted any evidence showing that they had a contract with either National City or Litton. Both of these entities were merely servicers of the plaintiffs' loan at some point in the past and were never the plaintiffs' actual lender or owner of their loan. National City and Litton acting as servicing agents for the holder of the Note and Deed of Trust at relevant times, collected payments, to the extent that payments were made by plaintiffs. After payments by plaintiffs stopped, Litton proceeded with foreclosure on behalf of the holder of the Note and Deed of Trust.

Plaintiffs have produced no evidence showing the existence of a contract with any of these defendants, much less a breach of contract by these defendants. Rather, the only breach evidenced by the documents submitted in this case show a breach by plaintiffs when they failed to make their required mortgage payments. Plaintiffs do not deny that they fell behind on their mortgage payments. Moreover, when the court granted plaintiffs'

-15-

request for a temporary restraining order to stop the eviction process, plaintiffs were unable to make bond and to set up a payment schedule so that they could remain in their home during the pendency of this action. The fact remains that the plaintiffs borrowed money, secured the loan with their former home, and failed to make the requisite payments for over four years. Since plaintiffs were in default on their Note, there is no genuine issue of fact as to Deutsche Bank's right to foreclose. Plaintiffs, not Deutsche Bank committed a breach of the mortgage contract. Accordingly, National City, Litton and Deutsche Bank will be granted summary judgment as to plaintiffs breach of contract claim.

Count Six alleges that National City, Litton and Deutsche Bank are guilty of violating the Tennessee Consumer Protection Act. A claim under the Tennessee Consumer Protection Act requires evidence that the plaintiff has suffered an ascertainable loss of money or property as a result of an unfair or deceptive act or practice by another person. Tenn. Code. Ann. § 47-18-109(a)(1). The Tennessee Supreme Court has suggested that a "deceptive act or practice" includes "a material representation, practice or omission likely to mislead a reasonable consumer" or "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." *Ganzevoort v. Russell*, 949 S.W.2d 293, 299 (Tenn. 1997). Having carefully reviewed the voluminous record in this case, the court cannot find any evidence of an unfair or deceptive act or practice committed by the defendants. There is no evidence of a material misrepresentation or the concealment of a material fact by defendants. The defendants' actions taken in response to plaintiffs' default on their mortgage were the ones specifically allowed pursuant to the terms of the

parties' agreements. Indeed, defendants' actions are those commonly taken by mortgage holders when a borrower is in default. The actions of a bank in repossessing and disposing of its collateral do not constitute violations of the Tennessee Consumer Protection Act, even if the bank acted wrongfully in repossessing the collateral. *Pursell v. First American National Bank,* 937 S.W.2d 838, 842 (Tenn. 1996). Accordingly, National City, Litton and Deutsche Bank are granted summary judgment on plaintiffs' claims under the Tennessee Consumer Protection Act.

Count Eight alleges that National City and Litton violated the Fair Debt Collection Practices Act. Defendants respond that they are not "debt collectors" as defined by the Act as it pertains to plaintiffs' mortgage loan, and the court agrees. The Fair Debt Collection Practices Act protects debtors from improper practices of "debt collectors" – third parties who attempt to recoup debts owed to creditors. 15 U.S.C. § 1692a(6); *Catencamp v. Cendent Timeshare Resort Group,* 471 F.3d 780, 781 (7th Cir. 1006). But a creditor who collects its own debt using its own name is not a "debt collector." 15 U.S.C. § 1692a(4), (6); *Nielsen v. Dickerson,* 307 F.3d 623, 634 (7th Cir. 2002); *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir. 1998). 15 U.S.C. § 1692a(6) does not include "any officer or employee of a creditor who, while acting in the name of the creditor, collects debts for such creditor." *See Burns v. Bank of America,* 2003 WL 22990065 (S.D.N.Y. 2003) (Mortgagee was not a "debt collector" subject to the Fair Debt Collection Practices Act where lender was attempting to collect its own debt, not another creditor's debt, using its own name.). Here, the plaintiffs have failed to allege that defendants fit the definition of "debt collector" under the Act because while the second amended complaint alleges a violation of the Act,

none of plaintiffs' allegations suggests that defendants were seeking to collect a debt other than the mortgage loan, and the second amended complaint does not allege that defendants used the name of a third party while attempting to collect the mortgage payments.

Moreover, plaintiffs have not shown that they suffered any damages as a result of any alleged violation of the Act. Defendants have submitted the affidavit of Debra Lyman, Vice President of Litton, in which she states that all late charges pertaining to plaintiffs' loan were waived as well as costs and attorney fees associated with the foreclosure on plaintiffs' property. Ms. Lyman also states that plaintiffs' loan was referred for foreclosure due to their failure to make monthly payments and not due to late charges. Therefore, defendants argue that plaintiffs assertions that improper late charges were added to their account fails.

The fact that no improper late fees were assessed, as evidenced by the charge reversals (credits) shown on the exhibits submitted negates plaintiffs' assertions that improper late fees were charged to their account. Nor have plaintiffs established that National City or Litton were "debt collectors" as defined by the Act. Accordingly, summary judgment will be granted to defendants on plaintiffs' claim under the Fair Debt Collection Practices Act.

Count Nine alleges that National City, Litton and Deutsche Bank are guilty of breach of fiduciary duty. Defendants respond that at all times material to this litigation,

-18-

Deutsche Bank was the trustee for the trust in which the plaintiffs' loan was vested. As a result Deutsche Bank was the beneficial holder of the Note and Deed of Trust on plaintiffs' home. National City, along with its predecessor, PCFS, and Litton served as the servicing agents for the plaintiffs' loan at various times. Plaintiffs appear to be claiming that a fiduciary relationship was created as a result of these relationships.

A fiduciary relationship is a special one characterized by one party vesting confidence in another that exercises dominion and influence over the vesting party. In Tennessee, absent special facts and circumstances, the relationship between a lender and a borrower is not inherently fiduciary. *Oak Ridge Precision Indus. Inc. v. First Tenn. Bank Nat'l Assn*, 835 S.W.2d 25, 30 (Tenn.App. 1992). In the context of plaintiffs' loan, Deutsche Bank, as trustee for the trust in which the plaintiffs' loan was held, was essentially the plaintiff's lender. National City and Litton were never the plaintiffs' actual lender, they were agents of the lender. Plaintiffs have presented no evidence of special facts or circumstances which establish a fiduciary relationship between the parties. Therefore, the court finds that no fiduciary relationship existed between the parties. Accordingly, defendants are granted summary judgment on plaintiffs' claims for breach of fiduciary duty.

In Count Eleven, plaintiffs allege that National City and Litton violated the Real Estate Settlement Procedures Act. Section 2605 of the Act sets forth certain duties of a loan servicer after receiving borrower inquires. Specifically, the section requires servicers to respond to a "qualified written request" from the borrower within 20 days of

receipt.  *See* 12 U.S.C. §2605(e)(1)(A).  The section also mandates that the servicer take certain actions within 60 days following the borrower's inquiry.  *See* 12 U.S.C. § 2605(e)(2).  Litton and National City, as plaintiffs' loan servicers, admit that plaintiffs submitted countless correspondence via fax, mail, and website inquires.  Defendants have submitted the affidavit of Debra Lyman, Vice President of Litton.  Ms. Lyman states that it is Litton's policy to always timely respond to consumer requests.  Plaintiffs have not submitted any countervailing evidence to support their allegations that defendants failed to respond to their inquiries in a timely fashion.

Regardless of whether Litton or National City violated any provision of the Act, plaintiffs have failed to establish any actual damages flowing from any alleged violation.  Plaintiffs claim damages resulting from the foreclosure of their home, they have not alleged any specific damages resulting from any violation of the Act, only the damages resulting from the foreclosure.  Because plaintiffs have failed to establish that they suffered actual damages from any alleged violation of the  Real Estate Settlement Procedures Act, their claim fails as a matter of law.

In Count Thirteen, plaintiffs assert a claim against National City under "U.C.C. Article 3."  Defendants argue that the Uniform Commercial Code, being a uniform body of law, is not an applicable state or federal law.  Moreover, the Uniform Commercial Code, as adopted by various states, regulates sales and secured transactions regarding personal property, not real property.  Plaintiffs have not cited to a specific state or federal statute that they allege to have been violated, nor have plaintiffs alleged that National City is guilty of

violating any applicable Tennessee law.  Therefore, defendants argue that plaintiffs have failed to state a claim upon which relief can be granted as to Count Thirteen of plaintiffs second amended complaint.

Defendants are correct that the Uniform Commercial Code, as a uniform body of law, is not applicable to the claims in this case.  Plaintiffs have alleged no violation of state or federal law by National City in Count Thirteen.  Accordingly, summary judgment is granted to defendants as to plaintiffs' claims for "violation of the U.C.C."

Deutsche Bank's Motion for Summary Judgment for Foreclosure Deficiency Balance

Deutsche Bank filed a counter-claim against plaintiffs for recovery of the deficiency balance resulting from the foreclosure of their former home.  In support of its motion, Deutsche Bank states that plaintiffs executed an Adjustable Rate Note and Deed of Trust in favor of New Century Mortgage Corporation on January 27, 2003 for the purchase of a home located at 2509 Corning Road, Maryville, Tennessee.  Said Deed of Trust is recorded in Book 1170, page 270 in the Register's Office for Blount County, Tennessee.  The Note and Deed of Trust were subsequently assigned to Deutsche Bank on February 3, 2003.

In Tennessee, the holder of the Note has the right to pursue foreclosure of the corresponding security instrument.  *See Frame v. Tabler,* 52 S.W. 1014 (Tenn.App. 1898); *Perrin v. Trimble*, 48 S.W. 125 (Tenn.App. 1898).  At the time of the foreclosure on March 20, 2007, Deutsche Bank was the holder of the Deed of Trust.  Both the Note and

-21-

the Deed of Trust contain the plaintiffs' notarized signatures. Defendants further state that pursuant to the terms of the relevant loan documents, plaintiffs are liable for the resulting deficiency balance remaining after foreclosure plus costs and reasonable attorney's fees.

Defendants further state that after proper notice to plaintiffs, a foreclosure sale was conducted on March 20, 2007. At the foreclosure sale, the highest and best bid was in the amount of $279,000.

Deutsche Bank has submitted the affidavit of Debra Lyman, Vice President of Litton. Ms. Lyman states that the $279,000 purchase price received for the plaintiffs' home was applied to the outstanding balance of the plaintiffs' loan, leaving a deficiency of $149,653.00. Ms. Lyman further states that defendants are not seeking to recover attorney fees or costs incurred with respect to the foreclosure, or additional interest that has accrued since the date the counter-claim was filed. Defendants are seeking to recover from plaintiffs only the deficiency balance of $149,653.00.

In their response, plaintiffs assert that late fees charged for periods before the loan originated and after the foreclosure occurred on March 20, 2007 are included in the deficiency balance that Deutsche Bank seeks to recover. However, defendants point out that all late fees that were charged were later reversed and credited to plaintiffs' account. In her affidavit, Ms. Lyman states that all late charges were waived and that no late charges were included in the deficiency balance which Deutsche Bank seeks to recover. Ms.

Lyman further states that plaintiffs' loan was referred for foreclosure due to their failure to make monthly payments and not for late charges.

The court has reviewed the documents submitted by the parties and finds there is no genuine issue of material fact with respect to plaintiffs' execution of the Note and Deed of Trust, the validity of the foreclosure, or the plaintiffs' liability for the deficiency balance resulting from the foreclosure. Accordingly, Deutsche Bank is granted summary judgment as to its counter-claim in the amount of $149,653.00.

Motions to Dismiss and for Summary Judgment Filed by the Allenders

William and Julie Allender have moved for dismissal and/or for summary judgment of all claims against them. The Allenders are the current owners of the property that is the subject of the dispute in this case. They purchased the property from Deutsche Bank after the bank foreclosed on the property.

Plaintiffs have included the Allenders in Count One alleging a violation of Tenn. Code Ann. §§ 66-13-101 and 66-3-104. As explained above, these statutes have no application for the foreclosure sale, or to the sale by Deutsche Bank to the Allenders.

As to Count Four alleging a criminal conspiracy in violation of Tenn. Code Ann. § 39-12-103, as there is no private right of action under this statute, there is no cause of action against the Allenders.

Next, plaintiffs allege the Allenders' purchase of their former home was in violation of the Tennessee Consumer Protection Act. As this count contains no allegation that the Allenders committed any unfair or deceptive acts or practices in the course of any trade or commerce, summary judgment is granted to them as to Count Six.

Finally, Count Thirteen alleges that the Allenders and the other defendants violated 18 U.S.C. §§ 241 and 242. However, as stated above, there is no private right of action for violation of this statute, and the Allenders are granted summary judgment as to Count Thirteen.

Motions to Dismiss and/or for Summary Judgment Filed by Randall Mercks

Randall Mercks is a Captain in the Blount County Sheriff's Office. He was the officer in charge of executing the Writ of Possession upon plaintiffs at their home on June 7, 2007. The allegations in plaintiffs' second amended complaint against Captain Mercks are:

1. He is a Captain of Blount County.

2. Mercks was twice informed of the Chapter 11 filing by New Century Mortgage Corporation, with Section 362 of the Bankruptcy code brought to his attention.

3. Mercks allegedly conspired with certain other defendants and their representatives to unjustly enrich himself and/or the Blount County Sheriff's Office.

4. Mercks willfully and knowingly violated plaintiff's civil rights under color of law and by using his position within the Sheriff's Office. Mercks intentionally defamed the plaintiffs.

-24-

In support of his motion to dismiss, Captain Mercks has submitted an affidavit in which he states that he executed a court issued Writ of Possession on June 7, 2007; his only involvement in this matter was the execution of the Writ upon the plaintiffs; and no constitutional rights of the plaintiffs were violated by him during the execution of the Writ on June 7, 2007.

For a complaint to allege a conspiracy theory, it must specifically present facts tending to shown an agreement and concerted action. *Sigmon v. Community Care HMO, Inc.,* 234 F.3d 1121, 1127-28 (10th Cir. 2000). To allege a conspiracy between private and state actors, the complaint must allege an agreement between the defendants to commit an illegal act and an actual deprivation of constitutional rights. *Cinel v. Connick*, 15 f.3d 1338, 1343 (5th Cir. 1994). A mere allegation that a conspiracy occurred is not sufficient. *Homes v. Finney,* 631 F.2d 150 (10th Cir. 1980); *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2nd Cir. 1992). A complaint must allege an agreement between two or more persons to injure someone by unlawful action under a single plan, that the alleged co-conspirators shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused a constitutional tort. *Hooks v. Hooks,* 771 F.2d 935 (6th Cir. 1985); *Memphis, Tennessee Area Local v. City of Memphis,* 361 F.3d 898, 905 (6th Cir. 2003).

The DVD of the execution of the Writ of Possession on June 7, 2007 was submitted to the court for review. The court has viewed the DVD and concludes that no constitutional violation occurred during the execution of the Writ. Captain Mercks and the

other officers involved were very polite and professional in their dealings with plaintiffs. This was admittedly a difficult situation for the officers as well as the plaintiffs. The court observed no actions on the part of Captain Mercks or the officers under his command which violated any constitutional rights of the plaintiffs.

Moreover, police officers are entitled to rely on a judicially secured warrant for immunity from a § 1983 action for alleged search and seizure as long as the warrant does have some indicia of probable cause. *Yancy v. Carroll County, Ky.,* 876 F.2d 1238, 1243 (6th Cir. 1989); *Brittingham v. Abner*, 2005 WL 3454318 (E.D.Tenn. 2005). In cases where an officer is acting pursuant to a valid warrant and at the direction of a judge, "a plaintiff cannot show a violation of a clearly established right as required by § 1983. The act of enforcing the court order, in this case a [writ of possession], is intrinsically associated with a judicial proceeding for which absolute immunity applies." *Id.* Captain Mercks relied upon the Writ of Possession and was acting at the direction of the Blount County General Session Court. Accordingly, Captain Mercks is entitled to absolute immunity for his actions in executing the writ.

In the alternative, even if there were a constitutional violation (which there was not), Captain Mercks is entitled to qualified immunity. In considering a claim for qualified immunity, the court must first address the threshold question of whether, taken in the light most favorable to the plaintiffs, the alleged facts show the officer's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). If a violation could be made out taking the facts in the light most favorable to the plaintiffs, then the next step is

-26-

to determine whether the right was clearly established in a particularized sense, such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. In cases where the claims are based on alleged Fourth Amendment violations, police officers are entitled to qualified immunity unless there was clearly no probable cause for the warrant. *Hutsell v. Sayre,* 5 F.3d 996, 1003 (6th Cir. 1993). In this case, Captain Mercks was relying on the Writ of Possession issued by the Blount County General Sessions Court. As stated above, the court has reviewed the DVD of the execution of the writ and observed no actions on the part of Captain Mercks or the other officers that violated any constitutional rights of the plaintiffs. Accordingly, Captain Mercks is entitled to qualified immunity for his actions in executing the writ.

## Conclusion

For the reasons stated above, the motions for summary judgment filed by plaintiffs [Docs. 125, 148, 150, 202] are **DENIED;** the motions to dismiss and/or for summary judgment filed by the Allenders [Docs. 133, 192, 199] are **GRANTED;** the motions to dismiss and/or for summary judgment filed by Randall Mercks [Docs. 138, 200] are **GRANTED;** the motion for summary judgment filed by C-BASS, Deutsche Bank, Litton Loan, and National City [Doc. 197] is **GRANTED,** whereby all claims of plaintiffs against the defendants are **DENIED,** and defendant Deutsche Bank is **GRANTED** judgment on its counterclaim against plaintiffs in the amount of $149,653.00**.**

Plaintiffs' motion for hearing to take sworn testimony from Greg Logue [Doc. 211] is **DENIED.**

The final pretrial conference on January 27, 2009 and the trial scheduled for February 3, 2009 are **CANCELLED.**

**ENTER:**

_____s/ Thomas W. Phillips_____
United States District Judge